# PAUL REVERE *versus* The BOSTON COPPER COMPANY.

A manufacturing corporation, the duration of which was not limited in its act of incorporation, except that it was made subject to *St.* 1808, *c.* 65, which authorizes the legislature to repeal any act or part thereof establishing any manufacturing corporation, as shall be deemed expedient, entered into a contract with the plaintiff, who was a stockholder, by which it was agreed, that the plaintiff should, during the time for which the corporation was established, devote his whole time and skill to the service of the corporation, in carrying on the business of manufacturing ; that the corporation should pay him an annual salary so long as he should continue to perform his part of the agreement, and that in case of his death or refusal to perform the agreement, the corporation should be discharged from their obligation. The plaintiff entered the service of the corporation, under this agreement, but the business was unprofitable ; and after the lapse of more than four years, a majority of the stockholders voted to dissolve the corporation and wind up its concerns. In pursuance of this determination, the corporation discharged the plaintiff from its service, transferred the property to trustees with authority to pay the debts and distribute the surplus among the stockholders, and gave notice to the executive department of the government, that they claimed no further interest in their act of incorporation. A by-law of the corporation provided, that the officers should hold their offices for one year, and until others were elected in their room. It was *held*, that the corporation was not dissolved by these proceedings ; that the contract in question was for an indefinite period of time, and was binding on the corporation until determined by the dissolution of the corporation, in a mode fixed by law, or by the death of the plaintiff, or by his failure to perform his part of the agreement ; and that the plaintiff was released from his obligation to serve the corporation, and was entitled to an indemnity for the loss which he had sustained in consequence of their refusal to employ and pay him.

It is competent to the legislature, by a formal act, to accept the surrender of an act of incorporation, and thereupon to dissolve the corporation. *Semble.*

ACTION upon the case. Upon an agreed statement of facts it appeared, that the action was brought upon a contract, dated March 15, 1825, entered into between the plaintiff and William Blake, of the one part, and the defendants, who were then a corporation under the name of the Boston and Braintree Copper and Brass Manufactory, of the other part.

By this contract it was agreed, that the plaintiff and Blake should, during the time for which the corporation was established, well and faithfully serve the corporation in the manufacturing of copper and brass articles and wares ; that they should not engage in any other business, but devote their whole time, talents and skill to the carrying on the manu-

facturing business and the promotion of the interest of the corporation ; that the corporation should pay to each of them an annual salary of $1500, commencing the year on the 12th day of March, so long as they should continue to perform their part of the agreement ; and that in case of the death or the refusal to perform the agreement, by the plaintiff or Blake, the corporation should be discharged from all obligation, except to the survivor or party continuing to perform the agreement.

By the *St.* 1824, *c.* 61, passed February 8, 1825, incorporating the Boston and Braintree Copper and Brass Manufactory, for the purpose of manufacturing copper and brass, it was provided that the corporation should " have all the powers and privileges, and also be subject to all the duties and requirements, prescribed and contained in " *St.* 1808, *c.* 65, which defines the general powers and duties of manufacturing corporations, and authorizes the legislature to repeal any act establishing any such corporation, as shall be deemed expedient. By the *St.* 1825, *c.* 124, the corporation was allowed to take the name of the Boston Copper Company.

The plaintiff entered the service of the corporation, of which he was also a member, on March 12, 1825, and continued in their employment until about December 31, 1829, when the corporation ceased to employ him, and gave him notice thereof, the plaintiff being then and always, as he alleges, ready to continue in their employment, of which he also gave them notice. The salary of the plaintiff was paid up to September 12, 1829 ; and the amount due to him, supposing the agreement to have terminated on December 31, 1829, was tendered to him on the last mentioned day.

It appeared that from the commencement, the enterprise was unsuccessful, and that after four or five years had elapsed, the corporation had made no dividend, and had lost a considerable part of their capital ; that the stockholders then took measures to close the concerns of the corporation ; that for this purpose at a meeting of the corporation on December 31, 1829, a vote was passed, appointing a committee to settle and adjust all concerns of the company, and to pay all the debts, sell all the property, both real and personal, collect

all the outstanding demands, and divide the surplus, after paying and providing satisfactorily for all debts, among the stockholders, according to their respective interests ; and that the committee wrote a letter, dated January 6, 1830, to the executive department of the government, stating therein, that it had been voted to dissolve the company, and giving notice that the charter is surrendered to the commonwealth, with all the franchises and privileges belonging to the same, except so far as may be necessary in closing their concerns, agreeable to *St.* 1819, *c.* 43.

It further appeared, that the third by-law adopted by the corporation provides, that the " officers shall hold their offices one year, and until others are elected in their room ; " and that officers were duly elected in the spring of 1829. All the members of the corporation are living.

The defendants contend, that so far as these parties are concerned, the corporation was dissolved on December 31, 1829, and that the contract was thereby terminated, if not before that time ; and that they were under no obligation to employ the plaintiff, even if they were satisfied with his services.

The plaintiff contends, that by virtue of the agreement, he is entitled to recover damages for the time subsequent to December 31, 1829, as his salary, or by reason of the injury sustained by him in consequence of the alleged breach of the agreement by the defendants, or as his salary for a part of the time, and as damages for being deprived of his salary, subsequently.

If upon these facts the Court should be of opinion, that the plaintiff was not entitled to recover any thing, he was to become nonsuit ; otherwise, the case was to be submitted to a jury.

The case was argued in writing.

*Webster*, *W. Phillips* and *Robins*, for the plaintiff. The points made by the plaintiff are as follows :

1. That the contract contained an agreement on the part of the defendants, to employ the plaintiff during his life.

2. That the dissolution of a corporation does not extinguish their contracts and liabilities. *Waldron* v. *Lee*, 5 **Pick.**

30 *

Revere
*v.*
Boston
Copper Co.

323 ; *Colchester* v. *Seaber*, 3 Burr. 1866 ; *The King* v
*Pasmore*, 3 T. R. 199 ; *Foster* v. *Essex Bank*, 16 Mass. R.
245 ; *Agnew* v. *Bank of Gettysburg*, 2 Har. & Gill, 478 ;
Angell & Ames on Corp. 354 ; *Bellows* v. *Hallowell and
Augusta Bank*, 2 Mason, 31 ; *Wood* v. *Dummer*, 3 Mason
308 ; *St.* 1819, *c.* 43.

3. That the vote passed on December 31, 1829, and the
proceedings under it, were to be considered as intended t7
wind up the business of the corporation, and thus to discon
tinue the use of a part of its franchises, leaving all its claims
and liabilities in full force.   The word " dissolution," as ap-
plied to a corporation, is used in various senses in the books,
sometimes meaning merely the winding up of its business,
and sometimes the loss of an integral part of the corporation,
on the replacing of which the corporation would still continue
to be the same corporation with all its powers and privileges.
*Colchester* v. *Seaber*, 3 Burr. 1866 ; *The King* v. *Pasmore*,
3 T. R. 242, 244, 245 ; *Slee* v. *Bloom*, 5 Johns. Ch. R.
366 ; *S. C.* 19 Johns. R. 456 ; *Penniman* v. *Briggs*, 1
Hopk. Ch. R. 305 ; *Brinckerhoff* v. *Brown*, 7 Johns. Ch.
R. 217 ; 2 Kent's Comm. (2d edition) 311 ; 9 Dane's
Abr. 73.

4. That if the vote passed on December 31, 1829, and
the proceedings under it, were intended as an attempt to ex-
tinguish the corporation and evade its contracts, the object
was fraudulent and the proceedings void as respects creditors.

5. That putting the question of fraud out of the case, and
allowing that the corporation intended to extinguish itself by
such vote and proceedings, they were not sufficient to carry
that intention into effect.   There are only four ways of ex-
tinguishing a corporation, laid down in the books, to wit :
1. By act of parliament.   There is no power in the legisla-
ture of this commonwealth to extinguish a corporation, like
that possessed by parliament ; and if there were, there is no
pretence that such a power has been exercised in this case.
2. By the death of all its members.   The members of this
corporation are all alive.   3. By forfeiture.   To effect a
dissolution in this way, there must be a judgment of for-
feiture, upon a *quo warranto* or *scire facias*, at the suit of the

commonwealth. 1 Bl. Comm. 485 ; 2 Kent's Comm. (2d ed.) 305 ; Angell & Ames on Corp. 501 ; *Colchester* v. *Seaber*, 3 Burr. 1866 ; *The King* v. *Pasmore*, 3 T. R. 199 ; *Slee* v. *Bloom*, 5 Johns. Ch. R. 366 ; *The King* v. *Amery*, 2 T. R 515 ; *Commonwealth* v. *Union F. & M. Ins. Co.*, 5 Mass R. 230 ; *Vernon Society* v. *Hills*, 6 Cowen, 23 ; *M'Laren* v. *Pennington*, 1 Paige's Ch. R. 102. 4. By surrender. In this case, there was no sufficient surrender made by the corporation ; nor was there any sufficient acceptance by the government. .1 Bl. Comm. 485 ; Willcock on Corp. 331, 332 ; 4 Com. Dig. *Franchise*, *G* 2 ; *Butler* v. *Palmer*, 1 Salk. 191 ; *The King* v. *Bridgewater*, 11 Mod. 291 ; Angell & Ames on Corp. 507, 508, 509 ; 2 Kent's Comm. (2d ed.) 311 ; *Enfield Toll Bridge* v. *Connect. River Co.*, 7 Connect. R. 45 ; *M'Culloch* v. *State of Maryland*, 4 Wheat. 316 ; *Riddle* v. *The Proprietors of the Locks and Canals &c.*, 7 Mass. R. 186 ; *Niagara Ins. Co. ex parte*, 1 Paige's Ch. R. 258.

6. That a corporation cannot extinguish itself or be extinguished by the government, in any way, so far as respects creditors. There may be no mode of legal service, for want of officers on whom to make the service, or there may be other defects in the remedy ; but so long as property or members of the corporation remain, it continues to exist as to its liabilities. It is not necessary to make good this position in the present case, but it seems to be supported by the following authorities ; *Waldron* v. *Lee*, 5 Pick. 323 ; *Colchester* v. *Seaber*, 3 Burr. 1866 ; *The King* v. *Pasmore*, 3 T. R. 199 ; *Foster* v. *Essex Bank*, 16 Mass. R. 245 ; *Agnew* v. *Bank of Gettysburg*, 2 Harr. & Gill, 479.

7. That the corporation is still subsisting ; *Agnew* v. *Bank of Gettysburg*, 2 Har. & Gill, 479 ; *People* v. *Runkel*, 9 Johns. R. 158 ; and is organized ; *M'Call* v. *Byram Man. Co.*, 6 Connect. R. 428 ; or can organize itself ; *St.* 1833, c 49.

8. That, at least, the plaintiff was entitled to his salary to the end of the year ; since the year could not be apportioned. *Pagani* v. *Gandolfi*. 2 Carr. & P. 370 ; *Stark* v. *Parker*, 2 Pick. 267 ; *M'Millan* v. *Vanderlip*, 12 Johns. R 165 ; *Jen-*

*ning* v. *Camp*, 13 Johns. R. 94 ; *Reab* v. *Moor*, 19 Johns.
R. 337.

*Hubbard*, *Fletcher*, and *Aylwin*, for the defendants. The
object of the present suit, is to charge the defendants with
the payment of an annual salary to the plaintiff for his life,
subject to no modification and apparently uncontrollable by
any circumstance or event. The question is, whether a con-
tract to this effect has been in fact made between the parties.
It was assumed by them, that there was a limitation of the
existence of the corporation to be found either in the act of
incorporation or in some general law ; and upon this assump-
tion, the plaintiff and Blake agreed to serve the corporation,
" *during the time for which the corporation was established.*"
In this particular, the parties were mistaken ; there is no limi-
tation in the act, and the corporation was therefore created for
an indefinite period of time.

The plaintiff, at the outset, finds himself obliged to abandon
the letter of the agreement, and contends for a construction
under which his lifetime is made the measure of the duration
of the contract. Such a construction is inconsistent with the
motives of the parties and objects of the association. It is
not to be presumed, that the corporation intended to stipulate
for the payment of salaries to these individuals, for their lives,
however inefficient and incapable of promoting the interest of
the corporation they might become. Such a contract would
be unequal and unreasonable. It is a well established rule,
that wherever a manifest absurdity or repugnance to the inten-
tion of the parties, would arise from the literal application of
the terms of their agreement, their general signification is to be
restrained or enlarged according to the evident reason and
justice of the case. Powell on Contracts, 385, 390 ; Dig.
50. 16. 219 ; 50. 17. 67 ; 41. 1. 80.

We are then brought to the inquiry, as to the true meaning
of this agreement. It is contended by the defendants, that
it was an engagement on their part, to employ the plaintiff and
Blake, not during the technical existence of the corporation,
but during its *business existence*, provided that their capacity to
render useful services should so long continue. A manufac-
turing corporation may justly be likened to a partnership for a

similar purpose. A partnership may be determined by death or insolvency, or by any other cause which would render its continuance nugatory ; it may be determined even by the absolute will of either partner, unless some restriction is imposed in the articles. The same principles should be applied in the case of a manufacturing corporation. If such a corporation should become insolvent, or if the prosecution of the business should become ruinous, there ought certainly to be no engagement raised *by implication*, which should require its existence to be prolonged without motive or end. Neither equity nor common sense would hold the association bound to consummate the destruction of all who were embarked in the enterprise.

The true object of creating manufacturing corporations, is .o facilitate the formation of partnerships. *Slee* v. *Bloom,* 19 Johns. R. 473 ; *Penniman* v. *Briggs,* 1 Hopk. Ch. R. 304.

The proposition of the defendants is, that for just cause, this corporation might close its business, yield up its powers, and thus dissolve itself ; not for the purpose of evading its contracts or getting rid of employing the plaintiff, but for lawful purposes and in the exercise of good faith.

This corporation was not created for any public object, and there is no law requiring its continuance. Its duration depended on the will of its members, except that the legislature, by virtue of *St.* 1808, *c.* 65, § 7, might repeal the act of incorporation, if it should be deemed expedient from motives of public policy. *Slee* v. *Bloom,* 19 Johns. R. 474 ; *Briggs* v. *Penniman,* 8 Cowen, 387 ; Angell & Ames on Corp. 509.

In the present case, there was a just cause for discontinuing the business of the corporation and giving up the exercise of its powers. The corporation was found to be advancing rapidly in the course of insolvency ; and a large majority of the members voted to dissolve the corporation and wind up its business. The plaintiff, as one of the members, was bound by such vote, although he individually dissented. To the application of this principle he assented, when he became a corporator.

So far from there being any fraud, actual or constructive,

in the dissolution of this corporation, it would have been a fraud on the public to have prolonged its existence, after it had become insolvent.

It is however objected, that the vote and the proceedings under it, were not sufficient to carry into effect the intention of dissolving the corporation ; and this is inferred chiefly from rules drawn from cases affecting municipal or political corporations in England. These rules can have but a remote application to the multitude of trading corporations which have sprung up here. The laws of this commonwealth point out no specific mode of surrendering an act of incorporation, although the right to make a surrender, is, in the nature of things, unquestionable. *St.* 1819, *c.* 43. It is a settled principle, that corporations may transfer all their rights to property, excepting in land only, by their votes. A vote is sufficient for the acceptance of an act of incorporation, and by parity of reason should be adequate to its surrender.

Let it be supposed, that the legislature had seen fit to dis· solve this corporation. What then would have become of the plaintiff's pretended contract for a salary for life ? Shall a resort be had to the annuity tables, and a conjectural estimate made of the amount to be paid to him by the corporation at once, as an indemnity for the loss of his annual stipend ?

It would seem, that as the authority to dissolve existed, it could not be well denied, that the agreement was made with a due regard to the exercise of such an authority, in case a majority of the corporation, for an adequate cause, should de-termine to bring its affairs to a close.

*Webster* and *Phillips*, in reply. As to the analogy between a corporation and a partnership, admitting even that they may be dissolved by the absolute will of any one member, this does not put it in the power of either to absolve itself, at its own election, from its contracts.

It is said, that the plaintiff, as a member of the corporat on, was bound by its acts. Certainly if the other members vote to break their agreement with the plaintiff, he is not bound by such a vote. To release the defendants, some act must be done by the plaintiff for that purpose, and it is not preten.led by the defendants that any such act was done.

As to the dissolution of the corporation and the surrender of its franchises, we suppose it would be contrary to the constitution of the United States, if the legislature should dissolve a corporation, where such a dissolution would have the effect of impairing or annulling its contracts ; and we presume that the defendants will not contend, that a mere vote of the corporation will have that effect.

The third by-law of the corporation provides, that the officers shall hold their offices for one year, and until others are elected in their room. The officers elected in 1829 are therefore still such. Besides, the *St.* 1833, *c.* 49, would enable the members to hold a meeting and organize the corporation by the election of officers. We cannot think that it admits of doubt, that this corporation still subsists, and is organized, and we see no reason why it should be exonerated from its contracts.

SHAW. C. J. delivered the opinion of the Court. This case comes before the Court upon an agreed statement of facts, and the question is, whether upon the case stated the plaintiff is entitled to recover.

The defendant corporation was established by the legislature, in February 1825, and about a month after its incorporation, made the contract, on which the question arises.

That agreement was made on March 15, 1825, and the cause depends upon its construction. It purports to be a mutual agreement between the corporation on the one part, and the plaintiff and another individual on the other part.

It is contended by the defendants, that by the proceedings stated in the case, this corporation was dissolved and determined, and so by the limitation in the contract itself, the term for which the plaintiff was engaged had ceased.

Without determining whether such a voluntary dissolution of the corporation was the event contemplated by the parties in the clause alluded to, we are of opinion, that by the acts disclosed, this corporation was not dissolved.

By a reference to the act of incorporation, *St.* 1824, *c.* 61, amended as to the name by *St.* 1825, *c.* 124, it appears, that the company was not incorporated for any determinate time, and was therefore, in its nature, perpetual. We think such a

corporation cannot dissolve itself, and terminate its own existence, at its own will, by a bare notice to the executive department of the government.

It may be asked then, what could have been contemplated by the clause in the contract, limiting the term of the plaintiff's engagement, to the time for which the corporation was established ; or how a corporation not limited in its duration can be dissolved and terminated. I suppose no reasonable doubt can exist, that the power to create, by the consent of parties, may, with the like consent, dissolve a corporation. An act of incorporation is deemed to be a contract, between its members and the sovereign, formed by the consent of both parties ; and it is conformable to the spirit of the law of contract, that, with the like consent, it may be abrogated and discharged, and therefore it would be competent for the legisture, by a formal act, to accept such a surrender, and thereupon dissolve the corporation. This would afford a security to the public and to all those who might have an interest in the concerns of such corporation, that no dissolution would be sanctioned by the legislature, which would in its consequences impair their rights.

But there is another circumstance which may be deemed sufficient to give a meaning and effect to this part of the agreement.

Although this act of incorporation had no provision limiting its duration to any certain time, yet it was made subject in all respects to the provisions of the general act regulating manufacturing corporations, St. 1808, c. 65, § 7, by which it is provided, that the legislature shall have power, at any time afterwards, to modify or wholly repeal any act of incorporation, thereafterwards to be made. This provision is therefore substantially embodied into the act of incorporation and made part of it. In consequence of this provision, the act was in effect held at the pleasure of the legislature, and had they passed an act, repealing it after a certain time, the period thus limited would determine the time for which it was incorporated, and fix a limit to the term of the plaintiff's engagement. But as no such act was passed, and no act was done which in our opinion would dissolve the corporation, the

time for which the plaintiff engaged, has not been limited or fixed by the clause in question. The question then recurs, upon the construction and legal effect of this contract.

The first and fundamental rule in the construction of a contract, is to ascertain the meaning and intent of the parties ; and the second is, to look at every clause and word of the instrument in which they have imbodied their contract, to ascertain that meaning.

The engagement of the plaintiff to perform services, being for the time for which the corporation was established, when applied to a corporation, constituted as already stated, is 'for an indefinite time, determinable by the dissolution of the corporation in a mode fixed by law. The stipulation of the corporation is, to pay the salaries to the plaintiff and the other individual, so long as they shall continue to perform their part of this agreement. This, without any further provision, must render the contract determinable by the death of the plaintiff, or by any failure to perform his part of the contract. But this is not left to inference. The next and last clause provides, that in case of the death or refusal to perform the agreement of the said Revere, or other individual, the corporation is to be discharged from all obligation except to the survivor or party continuing to perform. This clause, to my mind, carries a necessary implication, that until the death of the plaintiff or his refusal to perform his agreement, the corporation is not discharged, but the obligation to pay continues, and further, that upon the death or refusal to perform of one, the obligation of the corporation is to continue as to the other. This makes it essentially a contract with each, for life. For although this term is not used, yet a contract with a corporation, which is in its nature perpetual, but determinable by some contingent event, is a contract for an indefinite time, and a stipulation by the corporation to pay so long as the other party shall perform, with a proviso, that by the death of the party contracting to perform services, the corporation shall be discharged, is in legal effect a contract for life. Such, it appears to the Court, was the contract in the present case.

In opposition to this view, it is contended, in the able

argument for the defendants, that this could not have been the meaning and intent of the parties, because it would be unequal ; in case of the ill success of the contemplated enterprise, injurious and ruinous to the company ; and as the obvious intent and expectation of the company, of whom the plaintiff was one, was to carry on a useful, and successful, and profitable business, the contract must be taken to have been made with the necessary limitation, that if the business proved unprofitable, the defendants must be at liberty to bring it to a close, that should terminate their obligation to employ and pay the plaintiff for services.  They contend, that the parties contemplated, not the legal dissolution of the corporation, but the termination of its business existence, and this they had a right to determine, whenever they should find the enterprise unsuccessful, after a full and fair trial, and should in good faith for that cause judge it expedient to bring its business to a close.

These views would certainly deserve great consideration, and a more thorough investigation, if the terms of the contract were doubtful or ambiguous, and if it were open to construction.  But if the terms of the contract are plain and perspicuous, it is not enough to say, that the parties could not have intended what their language has plainly expressed. The bargain may have been hasty or improvident, or one of which we cannot see the reasons or ground.  Still, if such was the contract, and entered into fairly, it is not for a court of law to vary or alter it, or change its legal effect, upon vague notions of improvidence or inequality, or on account of its being founded upon expectations which have not been realized.  But, although in the result it may have proved unprofitable to the corporation, the Court cannot perceive that it was unequal as between the parties.  It is to be presumed, that the plaintiff had skill and experience in his business, and was so considered by the company.  They require him to stipulate, that he will devote the whole of his time, skill, and attention to their business for his life, and will engage in no other business.  The Court are not informed, what business the plaintiff and Blake were in before, what good will or run of custom, or profitable concern, they gave up and n effr*

brought to the corporation by this agreement, or what offers or expectations they might have had from rival companies. Whatever they were, they were relinquished for ever by this contract. The corporation secured to themselves the exclusive benefit of the services of these individuals ; and, although it may not have been beneficial to the corporation, it may have deprived the plaintiff and his associate of profitable engagements elsewhere.

One other ground of defence suggested, but I think not very confidently urged, by the defendants' counsel, is, that the plaintiff himself was one of the corporation, and as such was bound by its acts ; and that when a majority of the corporation voted to dissolve and wind up the business of the com pany, he was bound by it, though he individually dissented.

But we think it clear, that this argument cannot be sustained. So far as his rights, duties, and obligations as a *corporator* were concerned, no doubt he is bound by the acts of a majority, but no further. Here he claims, not as a corporator, but upon a contract, in which he is one party and the corporation the other. One of the main purposes and principal effects of incorporation is, to create a separate person in law, capable of acting and contracting in a separate capacity ; and such conventional person and body politic has a legal existence, independent of that of all its members, and therefore may as well contract with one of its own members, as with other persons. It follows, as a necessary consequence, that such contracts must be construed and carried into effect in the same manner as contracts between other parties, and that the votes and acts of the corporation can have no effect to deprive the plaintiff of rights, which he claims, not as a corporator, but as a contractor with the corporation.

As the damages are not assessed, it may be proper to say a few words upon that subject. We consider the true effect of this agreement to be this, to employ the plaintiff and to pay him an annual salary during such employment ; and the action is brought for a breach of that promise. The defendants have broken up their establishment, and given the plaintiff formal notice, that they have no further occasion for his

services. This discharges the plaintiff from his obligation to serve them and to engage 'n no other business, and puts him in a condition to engage in any other employment at his pleasure. This being in violation of the defendants' contract with the plaintiff, to employ and pay him, gives him a claim for damages. The measure of his damages is an indemnity for the loss he has sustained by reason of not being thus employed and paid, and the damages are to be assessed on that principle.